Filed 6/8/01 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2001 ND 114

Stutsman County, Petitioner and Appellee

v.

Tina Westereng, Respondent

          and

Job Service North Dakota,   Respondent and Appellant

No. 20000308

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable John T. Paulson, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Deborah J. Carpenter, Carpenter Law Offices, P.O. Box 2761, Bismarck, ND 58502-2761, for petitioner and appellee.

Douglas A. Bahr, Solicitor General, Attorney General’s Office, 500 N. 9th Street, Bismarck, ND 58501, for respondent and appellant.

Stutsman County v. Westereng

No. 20000308

VandeWalle, Chief Justice.

[¶1] Job Service North Dakota (“Job Service”) appealed the district court’s remand of Job Service’s decision on review which held Stutsman County’s account was chargeable for its proportionate share of benefits paid to Tina Westereng, a former employee.  The district court held the procedures used by Job Service did not afford Stutsman County a fair hearing to challenge the facts used by Job Service in making its decision and the decision was based on facts which were not made part of the record. We affirm the district court’s remand of Job Service’s decision on review.

I

[¶2] Tina Westereng was employed as a correctional center officer with Stutsman County from April 1, 1998, to April 8, 1999.  Westereng voluntarily resigned her position with Stutsman County.  

[¶3] On October 20, 1999, Job Service issued Stutsman County a Notice of Claim for Job Insurance Benefits.  The notice informed Stutsman County Westereng had filed a claim for job insurance benefits and the maximum potential charge to Stutsman County’s account for the claim was $3,294.32.  Stutsman County protested Job Service’s notice.

[¶4] A hearing was held on the issue of whether Stutsman County’s account was chargeable for Westereng’s benefits.  The only person to testify at the hearing was the auditor of Stutsman County.  In addition to information on the circumstances of Westereng’s resignation from Stutsman County, the auditor testified he had heard Westereng worked for a golf course following her departure from Stutsman County; however, he did not know the circumstances of her departure from the golf course employment or if she had worked the entire season.  There was no further information presented concerning Westereng’s employment after leaving Stutsman County.

[¶5] The appeals referee affirmed Job Service’s determination Stutsman County was chargeable for Westereng’s benefits.  The appeals referee concluded Stutsman County was a reimbursing employer; therefore, it was required to pay benefits despite the fact Westereng left the employ of Stutsman County voluntarily.  On that basis and on the basis of information in Westereng’s record that she had satisfied the re-

qualification provisions by earning wages in subsequent employment, the appeals referee concluded Westereng was “eligible to receive job insurance benefits provided she is unemployed through no fault of her own.” Without disclosing the wage information for determining the proportionate share or the circumstances of Westereng’s departure from the golf course, the appeals referee concluded a proportionate share of the job insurance benefits paid to Westereng was chargeable to Stutsman County. 

[¶6] Stutsman County appealed the referee’s decision to Job Service, raising the issues of whether Westereng was eligible for benefits and whether Stutsman County was charged its proportionate share.  Job Service affirmed the appeals referee’s decision.  Job Service did not disclose the information that served as the basis for determining the proportionate share stating “the amount charged is correct” because Stutsman County paid 69.618 percent of Westereng’s base-period wages and $3,294.32 was 69.618 percent of Westereng’s benefit amount.  The information that was the basis for the 69.618 percent or the total benefit amount was not disclosed.  Job Service stated Westereng’s “separation from that employment was not disqualifying” and she had earnings in excess of eight or ten times her weekly benefit amount.  Job Service also stated the exceptions to chargeability for voluntary leaving and misconduct in N.D.C.C. § 52-04-07(2) did not apply to reimbursable employers such as Stutsman County, because of  N.D.C.C. § 52-04-07(3).

[¶7] Stutsman County appealed Job Service’s decision on review to the district court.  The district court found the record Job Service used to decide the appeal did not contain information on Westereng’s employment after she left the employ of Stutsman County, the wages she earned, and the circumstances of her departure.  Without that information, the district court determined Stutsman County was unable to properly challenge the award of benefits and was not afforded a fair hearing.  The district court remanded to the agency to gather and obtain the facts at a hearing to allow inquiry by Stutsman County into those areas necessary for the proper presentation of claims and defenses, including presentation of testimony by Westereng.

II

[¶8] On appeal, we review the decision of Job Service.  
Powers v. North Dakota Job Service
, 1999 ND 162, ¶ 4, 598 N.W.2d 817.  Scope and procedure on appeal from an administrative agency decision is set forth in N.D.C.C. § 28-32-19 of the Administrative Agencies Practice Act.   

A judge of the district court must review an appeal from the determination of an administrative agency based only on the record filed with the court.  After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court must affirm the order of the agency unless it shall find that any of the following are present:

1.   The order is not in accordance with the law.  

2. The order is in violation of the constitutional       rights of the appellant.  

. Provisions of this chapter have not been complied with in the proceedings before the agency.  

. The rules or procedure of the agency have not afforded the appellant a fair hearing.  

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.  

6. The conclusions of law and order of the agency are not supported by its findings of fact.  

Under N.D.C.C. § 28-32-19, we affirm the agency decision unless one of the six enumerated reasons exists for overturning it.  
Esselman v. Job Service North Dakota
, 548 N.W.2d 400, 402 (N.D. 1996).  We do not make independent findings of fact or substitute our judgment for that of the agency, but decide only whether a reasoning mind could have reasonably decided the agency's factual conclusions were proved by the weight of the evidence.  
Stalcup v. Job Service North Dakota
, 1999 ND 67, ¶ 6, 592 N.W.2d 549.  The interpretation of a statute, however, is a question of law which is fully reviewable.  
Lawrence v. North Dakota Workers Comp. Bureau
, 2000 ND 60, ¶ 11, 608 N.W.2d 254.  A person is denied due process or a fair hearing when the defects in the hearing process might lead to a denial of justice.  
Hoffman v. North Dakota Workers Comp. Bureau
, 1999 ND 66, ¶ 12, 592 N.W.2d 533.  

III

[¶9] Job Service asserts Stutsman County, as a base-period employer of Westereng, is chargeable once Job Service has established Westereng is eligible for benefits and benefits are paid.  Base-period employers are employers who have paid an individual in the first four of the last five completed calendar quarters immediately preceding the first day of an individual’s benefit year.  N.D.C.C. § 52-01-01(3), (4).  Stutsman County is a base-period employer of Westereng.  However, Stutsman County’s status as a base-period employer does not make it automatically chargeable for the amount determined by Job Service without the opportunity to challenge that determination. 

[¶10] Similarly, Job Service insists Stutsman County is required to pay its proportionate share of benefits paid to Westereng because it is a reimbursable method employer.  Stutsman County is a reimbursable method employer.  The reimbursable method is an option available to governmental entities within the state of North Dakota.  N.D.C.C. § 52-04-19.1.  Section 52-04-19.1(2)(c) provides:

In lieu of contributions an employer may elect to pay to the bureau for the unemployment fund an amount equal to the amount of benefits paid under chapters 52-06 and 52-07.1 which are attributable to wages paid in the employ of such governmental employer, to individuals for weeks of unemployment.

[¶11] Job Service correctly concluded Stutsman County, as a reimbursable method employer, is not excused from being charged because Westereng voluntarily left her employment with Stutsman County.  N.D.C.C. § 52-04-07.  Section 52-04-07(1), N.D.C.C., requires benefits paid to an individual “must be charged against the accounts of the individual’s base-period employers.”  However, N.D.C.C. § 52-04-

07(2)(b) provides an exception, stating an employer’s account may not be charged:

With benefits paid to an individual who left the employment of the employer voluntarily without good cause or with good cause not involving fault on the part of the employer or who was discharged from employment by the employer for misconduct.

Although this exception applies to contributing employers, this exception does not apply to Stutsman County because N.D.C.C. § 52-04-07(3) provides “[s]ubsection 2 does not apply to benefit payments which are financed under a reimbursable method.”  Therefore, the fact Westereng left Stutsman County voluntarily does not absolve Stutsman County of future responsibility as a base-period employer.  If Westereng is eligible for benefits, Stutsman County is chargeable for its proportionate share of the benefits paid. 

IV

[¶12] Job Service contends Stutsman County is improperly trying to relitigate whether Westereng voluntarily quit or was discharged from her most recent employer.  Job Service is required by N.D.C.C. § 52-06-12.1 to notify a base-period employer of an individual’s eligibility and the maximum potential charges.  Job Service claims it is required to make the determination and notify the base-period employer and is therefore not required to disclose the information used to make the determination.  However, a statute that requires Job Service to notify base-period employers upon determination of a benefit amount does not abolish that employer’s right to challenge Job Service’s decision.  Requiring notification does not cancel the requirement of disclosure of information which served as the basis for Job Service’s determination.  
See
 N.D.C.C. § 28-32-06 (requiring “[n]o information or evidence except that which has been offered, admitted, and made a part of the official record of the proceeding shall be considered by the administrative agency, except as otherwise provided in this chapter”); N.D.C.C. § 28-32-07 (providing for consideration of information not presented at a hearing after transmitting a copy to each party and affording each party an opportunity to examine the information, present its own information, and cross-

examine the person providing the information).
(footnote: 0) 

[¶13] Job Service claims Stutsman County is not allowed to collaterally attack the determination of Westereng’s eligibility for benefits because it is not her most recent employer and “[n]owhere does the law provide that an earlier base-period employer can challenge Job Service’s eligibility decision.”  Job Service relies on N.D.C.C. § 52-06-21 which provides for the conclusiveness of determinations and decisions. 

Except insofar as reconsideration of any determination is had under the provisions of the North Dakota Unemployment Compensation Law, any right, fact, or matter in issue directly passed upon or necessarily involved in a determination or redetermination which has become final, or in a decision or appeal under the North Dakota Unemployment Compensation Law which has become final, is conclusive for all the purposes of the North Dakota Unemployment Compensation Law as between the bureau, the claimant, and all employing units who had notice of such determination, redetermination, or decisions.  Subject to appeal proceedings and judicial review as provided in the North Dakota Unemployment Compensation Law, any determination, redetermination, or decision as to rights to benefits is conclusive for all the purposes of the North Dakota Unemployment Compensation Law and is not subject to collateral attack by any employing unit, irrespective of notice.

[¶14] Relying on this statute, Job Service claims a base-period employer cannot challenge its determination of eligibility and maximum potential charges.  Although N.D.C.C. § 52-06-21 establishes the conclusiveness of decisions of Job Service, the statute also provides these are “[s]ubject to appeal proceedings and judicial review.”  Stutsman County’s claim concerns its own responsibility to pay unemployment benefits.  Stutsman County’s appeal of the determination of Westereng’s eligibility and calculation of the amount it must pay, as a base-period employer, is a direct appeal as provided by the unemployment compensation law and the Administrative Agencies Practice Act.  
See
 N.D.C.C. § 52-04-17 (providing for appeal from agency determinations of coverage); N.D.C.C. § 52-06-20 (requiring any hearing or appeal  be “conducted in such manner as to ascertain the substantial rights of the parties”); N.D.C.C. § 28-32-07 (requiring information considered by agency be disclosed to each party); N.D.C.C. § 28-32-14 (“[a]ny party before an administrative agency who is aggrieved by the final order of the agency . . . may file a petition for reconsideration with the agency”); N.D.C.C. § 28-32-15 (“[a]ny party to any proceeding heard by an administrative agency . . . may appeal from the order”).

V

[¶15] Job Service further maintains it could not legally provide Stutsman County with Westereng’s employment information from her most recent employer because N.D.C.C. § 52-01-03 establishes this information is confidential.  Because the records are confidential, Job Service argues it can make the mathematical computation outside the context of an adversarial proceeding and Stutsman County does not have the right to review the confidential records or challenge Job Service’s computation.  [¶16]

Job Service interprets the scope of the confidentiality provision of N.D.C.C. § 52-01-03 too broadly.  Section 52-01-03, N.D.C.C., provides for the disclosure of employment information obtained from employers and individuals. 

Except as otherwise provided in this section, information obtained from any employing unit or individual pursuant to the administration of the North Dakota Unemployment Compensation Law and determinations as to the benefit rights of any individual must be held confidential and may not be disclosed or be open to public inspection in any manner revealing the individual’s or employing unit’s identity.  Any claimant or claimant’s legal representative must be supplied with information from the records of the job insurance division, to the extent necessary for the proper presentation of the claimant’s claim in any proceeding under the North Dakota Unemployment Compensation Law with respect to the claim. 

[¶17] The confidentiality provision of N.D.C.C. § 52-01-03 limits disclosure of information obtained from employers and individuals, but not to the extent of keeping it from base-period employers who are interested parties to a claim.    

[¶18] Other courts have held the confidentiality of unemployment compensation information is not absolute.  The Supreme Court of Kansas held an employer was entitled to discovery of information necessary for the proper presentation of its unemployment compensation claim.  
Centro Mgmt. v. Kansas Dept. of Human Resources
, 699 P.2d 524, 530 (Kan. 1985).  Interpreting the Kansas disclosure statute, permitting disclosure to a claimant or employing unit of information to the extent necessary for proper presentation of a claim, the Kansas court determined the employer properly asked for review of its contribution rate and it was entitled to all the information the agency used in calculating its rate.  
Id.
  Therefore, it held an exception to the confidentiality provision applied since the information was necessary for the employer to perfect its claim.  
Id.
  In a more recent case in Kansas, the statutory language required the transcript to unemployment benefit hearings be sealed; however, the court of appeals held nothing in the confidentiality statute prohibited disclosure of any information obtained under the unemployment compensation law, including the transcripts, upon request of either of the parties for the purpose of adjudicating benefits.  
Farmers Coop. Elevator & Mercantile Ass’n v. Employment Sec. Bd. of Review
, 966 P.2d 699, 708 (Kan. App. 1998).  The language making transcripts undiscoverable in other proceedings, the Kansas court concluded, “must logically be referring to proceedings, hearings, and determinations outside the unemployment benefits context.”  
Id.
 at 706.

[¶19] In a workers compensation claim, the Court of Appeals of Louisiana held unemployment compensation information was protected from disclosure “except to the extent necessary for the proper administration and enforcement” of the unemployment compensation act. 
Thymes v. Ampco Plastics
, 303 So.2d 594, 597-98 (La. App. 1974).

[¶20] The purpose of the statute protecting the confidentiality of unemployment compensation information is to encourage full, free and honest reporting.  
Hinojosa v. Joslyn Corp.
, 635 N.E.2d 546, 547 (Ill. App. 1994).  To further this purpose, these cases interpret statutes to protect unemployment records from public access and from use in unrelated legal claims.  Although the statutes discussed in these cases are not identical, they are similar to N.D.C.C. § 52-01-03.  The decisions construing these statutes uniformly reflect the right to access for use in determining a claim, information that otherwise would be confidential. 

[¶21] Under the North Dakota statute, Job Service contends the information is available to the claimant but not to the employer.  We decline to take such an unbalanced view of the statute.  A scheme that permits the employee but not the employer to access the information for the purpose of the employee’s claim raises serious issues of due process and equal protection.  The statute as interpreted by Job Service does not afford a fair hearing to Stutsman County.  Nor is a hearing in which one party does not have access to pertinent information available to the other party “conducted in such manner as to ascertain the substantial rights of the parties.”  N.D.C.C. § 52-06-20.  Rather, we construe the phrase in N.D.C.C. § 52-01-03 requiring any claimant or claimant’s representative to be supplied with the information to the extent necessary for proper presentation of the claimant’s claim, when considered together with the  other statutes in N.D.C.C. title 52 and N.D.C.C. chapter 28-32, to necessarily include the disclosure of that information to the employer.  The employer is an integral part of the scheme for resolving unemployment compensation claims under the North Dakota statutes.  The claimant’s claim cannot be properly presented when the necessary information is not disclosed to the employer.  Disclosure of the information to the employer as well as the employee is therefore necessary “for the proper presentation of the claimant’s claim” under the North Dakota statute.  N.D.C.C. § 52-01-03.

[¶22] We affirm the district court’s remand to Job Service to gather and obtain the facts at a hearing, and to allow inquiry by Stutsman County into those areas necessary for the proper presentation of claims and defenses. 

[¶23] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

FOOTNOTES
0:     ぃ
The procedures governing Job Service unemployment compensation are delineated in the general provisions of the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, and in N.D.C.C. ch. 52-06.  
Stalcup v. Job Service North Dakota
, 1999 ND 67, ¶ 11, 592 N.W.2d 549. The provisions in N.D.C.C. ch. 52-06 concerning appeals and access to information do not conflict with N.D.C.C. ch. 28-

32.